IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOLEY STEGENA,<br><br>    *Plaintiff,*<br><br>v.<br><br>NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>    *Defendant.* | Civil Action No. 2:20-cv-428<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

Plaintiff, Joley Stegena ("Stegena"), filed this action against Defendant, Nationwide Property & Casualty Insurance Company ("Nationwide"), requesting monetary relief under common law on the ground that Nationwide allegedly breached an insurance agreement between the parties, and that in doing so, Nationwide acted in bad faith in violation of 42 Pa. C.S. § 8371. (ECF No. 1-2, ¶¶ 31–56). Nationwide filed a Motion for Partial Summary Judgment (ECF No. 40), requesting that the Court grant summary judgment on Stegena's statutory bad faith claim. Oral argument was held and the issues are fully briefed. For the reasons that follow, the Court will grant Nationwide's Motion for Partial Summary Judgment (ECF No. 40).

**I.  BACKGROUND**

This case arises out of Stegena's insurance claim for underinsured motorist benefits that was filed after she was in a car accident with Christopher Geyer ("Geyer"). She contends the accident resulted in several injuries, including, among other things, lower back, carpal tunnel, dental, and head injuries. At the time of the accident, Stegena's vehicle was insured by Nationwide and Geyer's vehicle was insured for $25,000.00 by State Farm Insurance Company ("State Farm").

1

Stegena's policy covered a total of four vehicles, with each being individually insured for $300,000.00. The policy allowed for those amounts to be aggregately stacked for a total of $1,200,000.00. (ECF No. 42, ¶¶ 1–8, 22); (ECF No. 46, ¶¶ 1–8, 22).

Stegena's claim for underinsured motorist benefits was made through her attorney at the time, William E. Stockey ("Stockey"). After Nationwide opened her claim, it was assigned to a Claim Adjuster, Norman Friel ("Friel"). (ECF No. 42, ¶¶ 9–10); (ECF No. 46, ¶¶ 9–10). Friel predominantly handles underinsured and uninsured motorist claims and has been doing so since 1997. (ECF No. 42, ¶¶ 30–31); (ECF No. 46, ¶¶ 30–31). Friel requested, obtained, and reviewed Stegena's first-party medical benefits claim file. (ECF No. 42, ¶ 36); (ECF No. 46, ¶ 36). Friel then conducted a separate and independent analysis of Stegena's claim, and in doing so, he reviewed multiple demand packages from Stockey, as well as Stegena's out-of-pocket expenses, applicable benefit liens, boardable special damages, complaints, progression of injuries, and pre-existing medical conditions. Friel identified several preexisting medical conditions, including back problems, carpal tunnel issues, and headaches. He offered $65,000.00 ($90,000 total value) to Stegena to settle her underinsured motorist claim. Stegena, however, rejected that offer because Friel subsequently received a demand package from Stockey that requested $320,000.00 to resolve the claim. (ECF No. 42, ¶¶ 33–45); (ECF No. 46, ¶¶ 33–45).

From Friel's perspective, he believed that $320,000.00 "was at the higher end of . . . Stockey's range . . . . [,]" and that Stegena's claim was valued below $200,000.00. (ECF No. 42, ¶¶ 46, 51); (ECF No. 46, ¶¶ 46, 51). Friel was willing to resolve the claim for an amount in "the low twos[,]" and he employed an attorney, Scott Redman ("Redman"), to conduct an examination of Stegena under oath to facilitate the resolution of her claim. Upon completion of Redman's examination, Friel increased the settlement offer to $100,000.00—an amount that Stockey

recommended Stegena accept because he thought it was both fair and reasonable. (ECF No. 42, ¶¶ 28–29, 46–49); (ECF No. 46, ¶¶ 28–29, 46–49). Stegena, however, did not accept the offer and subsequently terminated the services of Stockey. (ECF No. 42, ¶ 55); (ECF No. 46, ¶ 55). Stegena retained new counsel, withdrew all prior demands for settlement, and demanded payment of the total stacked policy limit of $1,200,000.00 to resolve her claim for underinsured motorist benefits. (ECF No. 42, ¶ 55); (ECF No. 46, ¶ 55).

## II.   STANDARD OF REVIEW

A motion for partial summary judgment is reviewed under the same standard as a motion for full summary judgment. *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994). Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof," will defeat a motion for summary judgment. *El v. Se Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof." *Ins. Co. of Greater N.Y. v. Fire*

*Fighter Sales & Serv.'s Co.*, 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015) (citing *Celotex Corp.*, 477 U.S. at 322). "Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324).

### III. ANALYSIS

Nationwide requests that the Court grant partial summary judgment in its favor on Stegena's statutory bad faith claim on the ground that a factfinder could not reasonably find, by clear and convincing evidence, that Friel lacked a reasonable basis for his evaluation, and that he knew or recklessly disregarded an absence of a reasonable basis. (ECF No. 41, pp. 7–8). Stegena contends that Nationwide acted in bad faith "when it refused to tender [her] UIM policy limits[]" and that Friel's offer of settlement was "a low-ball offer that bears no reasonable relationship to [her] actual losses . . . ." (ECF No. 45, p. 8) (citation omitted).

"Pennsylvania provides for a statutory remedy for an insurer's bad faith in acting upon an insured's claim." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190–91 (3d Cir. 2021) (citing 42 Pa. C.S. 8371). "Although the term 'bad faith' is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994)) (cleaned up). "To prevail on a bad faith claim, *the insured must demonstrate* 'by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Gibson*, 994 F.3d at 191 (quoting *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d

4

364, 377 (Pa. 2017)) (emphasis added). "The evidentiary burden on a plaintiff opposing summary judgment is 'commensurately high.'" *Id.* (quoting *J.C. Penney Life Ins. Co.*, 393 F.3d at 367). *See also J.C. Penney Life Ins. Co.*, 393 F.3d at 367 (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)) ("The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty, and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'"). "By contrast, all that is needed to defeat a claim of bad faith under § 8371 is evidence of a reasonable basis for the insurer's actions or inaction." *Gibson*, 994 F.3d at 191 (citation omitted).

"In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim." *Moran v. United Serv.'s Auto. Assoc.*, No. 18-2085, 2019 WL 626440, at *3 (M.D. Pa. Feb. 14, 2019) (citing *Terletsky*, 649 A.2d at 688–89). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Id.* (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. 2006)) (internal quotation marks omitted). "Mere negligence is insufficient for a finding of bad faith under [§] 8371." *Id.* (quoting *Rancosky*, 170 A.3d at 374) (internal quotation marks omitted) (cleaned up).

> [F]or an insurance company to show it had a reasonable basis, an insurance company is not required to demonstrate its investigation yielded the correct conclusion or even that its conclusion more likely than not was accurate. The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."

*Cantor v. Equitable Life Assur. Soc'y of U.S.*, No. 97-5711, 1999 WL 219786, at *3 (E.D. Pa. Apr. 12, 1999).

Stegena's argument in support of her statutory bad faith claim consists almost entirely of nothing more than a bare recitation of the materials and evidence submitted in support of her claim, together with monetary valuations included in the opinions of experts procured after the initiation of this litigation:

> Here, Plaintiff has presented enough evidence that has established enough facts for a jury to reasonably infer that Nationwide acted in bad faith when it refused to tender Plaintiff's UIM policy limits. Plaintiff submitted an overwhelming amount of medical documentation to Nationwide, along with multiple authorizations for Nationwide to obtain additional medical records. Furthermore, Plaintiff willingly submitted herself to a sworn statement under oath prior to initiating litigation. Despite the medical records, expert reports proving Plaintiff's injuries as a result of the auto accident, her sworn statement in support of her damages, an expert report supporting her economic claim for diminished earning capacity as a result of her necessary change in careers in an amount ranging from **$609,000.00** to **$1,302,796.00**, and an expert report supporting her economic claim for future medical expenses amounting to **$1,133,289.04**, Nationwide refused to tender Plaintiff's policy limits and has failed to offer an amount beyond its $100,000 low-ball, pre-suit offer.

(ECF No. 45, p. 8). The problem with Stegena's argument is that, although she provides sizeable dollar amounts, which her experts claim represent prospective lost wages and medical expenses, her argument fails to address the present issues before the Court—why there was an absence of a reasonable basis, or how Friel knew or recklessly disregarded that absence.[1] *See Miezejewski v. Infinity Auto Ins. Co.*, No. 12-1000, 2014 WL 241966, at *5 (M.D. Pa. Jan. 22, 2014) (quoting *Blaylock v. Allstate Ins. Co.*, No. 06-1456, 2008 WL 80056, at *13 (M.D. Pa. Jan. 7, 2008)) ("A

---

[1] The content contained and discussed in Stegena's expert reports is generally relevant to an ultimate award of damages. Simply reciting that she may have earned more money in the future, or that she will incur future medical expenses, without linking those calculations to Friel's investigation does not properly address the issue before the Court, which is the merits of the bad faith claim—that is, the reasonable or unreasonable link between Friel's considerations and his determination. *Cf. Lockhart v. State Farm Mut. Auto. Ins. Co.*, 410 F. App'x 484, 487 (3d Cir. 2011) (holding district court did not abuse its discretion when it gave no weight to expert report procured by the opposition in an insurance bad faith case because the expert opinion was of no assistance.").

plaintiff in a bad faith claim must show that the outcome of the case would have been different if the insurer had done what the insured wanted done.") (internal quotation marks omitted). In other words, Stegena has done little—outside of naming and bolding numbers—to actually diminish Friel's basis for the settlement offers. *See Clarke*, 2019 WL 522473, at *4 (denying reconsideration of order dismissing bad faith claim because the only support for that claim was records of medical treatment and bills, and regardless of the parties' differences in valuation, the plaintiffs did not supply "any additional facts to support a finding that [the] [d]efendants' conduct constituted bad faith."); *McDonough v. State Farm Fire and Cas. Co.*, 365 F. Supp. 3d 552, 558 (E.D. Pa. 2019) (discussing how bad faith claims "must be supported by specific facts illustrating where and how [the insurance company's] conduct indicated bad faith.").

Although Stegena correctly points out that, under the right circumstances, an unsupported low-ball offer may support a claim for insurance bad faith, *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citation omitted), it remains her burden to scrutinize the relationship between Friel's considerations and determinations. To the Court, Stegena's inability or failure to identify, with any specificity, factual deficiencies illustrating the unreasonableness of Friel's conduct, demonstrates that her claim is more properly characterized as an inappropriate, generalized grievance over the monetary valuation of her claim. *See Moran*, 2019 WL 626440, at *4 (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012)) (collecting cases and stating that a "dispute or discrepancy in the valuation of a claim between the insurer and the insured is not alone indicative of bad faith.").

The record before the Court provides evidence of Friel's investigation and determinations, and, more specifically, the process that he used to evaluate and value the claim. It cannot be characterized as anything other than reasonable, as that term applies in the bad faith context.

Nationwide promptly assigned Friel to evaluate Stegena's claim for benefits. Friel obtained and reviewed Stegena's first-party medical benefits claim file, and subsequently conducted an independent analysis of her claim, which included review of demand packages, out-of-pocket expenses, applicable benefit liens, boardable special damages, complaints, progression of injuries, and pre-existing medical conditions. After Stegena rejected the initial offer of $65,000.00 ($90,000 total), Friel obtained counsel to examine her under oath, and he upped the offer to $100,000.00. Despite Stockey counseling Stegena to accept the offer for its fairness and reasonableness, she still rejected it in pursuit of the policy limit. *See Miezejewski*, 2014 WL 241966, at *4–7 (finding no bad faith even though the insurance company did not request the first-party medical benefits file, request permission to speak with the plaintiff, or obtain pre-accident medical records).

Stegena attempts to undermine the reasonableness of Friel's conclusions by pointing to his testimony. Stegena contends that "Nationwide blatantly fails to address the fact that its *own adjuster*, Mr. Friel, explicitly testified that he believed the wage loss component of Plaintiff's claim was 'going to be a significant component . . . .'" (ECF No. 45, p. 9) (quoting (ECF No. 47-11, pp. 13–14)). She fails to mention, however, the remaining portion of Friel's testimony where he provided that he "didn't get a great deal of confirmation that any job change or salary differential that may have existed was related to the accident, as opposed to her choice to go to the school district." (ECF No. 47-11, p. 13). If Friel's testimony indicates anything, it is that he undertook a process of reviewing Stegena's claim request, and after finishing his investigation, he did not

8

"believe the out-of-pocket component . . . was a significant, ongoing issue."[2] (ECF No. 47-11, pp. 14–15).

Under these circumstances, there are no genuine disputes of material fact, and Stegena has not adduced enough evidence that would allow a factfinder to reasonably conclude that she satisfied her "commensurately high" burden of establishing that Friel lacked a reasonable basis, and that he knew or recklessly disregarded the same. Stegena may disagree with Nationwide's valuation of her injuries, perhaps vehemently so, but she has failed to offer any facts that could show, by clear and convincing evidence, that the valuation made was in bad faith. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (discussing that a disagreement over the amount of an underinsured motorist claim is not unusual, and "the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith.").

---

[2] The Court also notes that Stegena testified that she made approximately the same hourly wages for her work as an air handler and custodian. (ECF No. 54-2, pp. 4–7). What is more, although Stegena would earn a slightly higher hourly wage for days in which she filled in as a delivery driver, her tax returns show that she earned more compensation after the accident working full-time with overtime as a custodian, than before working part-time for UPS. (ECF No. 54-2, pp. 4–5, 9–10); (ECF No. 54-3).

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Nationwide's Motion for Partial Summary Judgment (ECF No. 40). An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

7-19-21
Dated